


UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF PENNSYLVANIA

SEAN D. RIES, JOHN R. MURRAY,
PHILIP C. HENRY, STEPHEN H.
WEDEL, and others similarly situated,
    Plaintiffs,
  v.

ALLMERICA FINANCIAL
CORPORATION, ALLMERICA
FINANCIAL LIFE INSURANCE AND
ANNUITY COMPANY, and
FREDERICK H. EPPINGER, JR.,
    Defendants.

Civil Action No. 04-0898

## DEFENDANTS' MEMORANDUM
## IN OPPOSITION TO PLAINTIFFS' MOTION TO REMAND

Defendants Allmerica Financial Corporation and Allmerica Financial Life Insurance and Annuity Company (collectively, "Allmerica") and Frederick H. Eppinger, Jr. submit this memorandum in opposition to plaintiffs' Motion to Remand. This Court should not remand the case for two reasons.

First, this Court should not even reach the merits of the Motion to Remand because plaintiffs conceded subject matter jurisdiction when they filed a similar class action against Allmerica in the District of Massachusetts. Allmerica filed a Motion to Transfer -- which plaintiffs have not opposed -- this action to Massachusetts so it may be consolidated with that case. Plaintiffs remarkably do not even acknowledge their Massachusetts Action, much less rationalize their impermissible attempt to maintain overlapping class actions against Allmerica in different fora. Nor could plaintiffs possibly explain why they have invoked federal court jurisdiction in Massachusetts while denying that it exists here.

Second, to the extent the Court elects to reach the merits of the Motion to Remand, it should be denied. The Pennsylvania class action was properly removed to this Court under the Securities Litigation Uniform Standards Act ("SLUSA"), 15 U.S.C. §§ 77p(c), 78bb(f)(2). It also is within this Court's diversity jurisdiction under 28 U.S.C. § 1332, which is the very basis upon which plaintiffs sued Allmerica in the District of Massachusetts.

## ARGUMENT

I.  **THE MOTION TO REMAND -- AND THE REST OF THE CASE -- SHOULD BE TRANSFERRED TO AND DECIDED BY THE DISTRICT OF MASSACHUSETTS, WHERE PLAINTIFFS FILED THEIR OTHER CLASS ACTION AGAINST ALLMERICA.**

The Court should not even consider plaintiffs' Motion to Remand given the pendency of Allmerica's *unopposed* Motion to Transfer to the District of Massachusetts, where this case may be consolidated with the closely-related class action that plaintiffs filed against Allmerica, Donald P. Speakman, Stephen H. Wedel and Mark L. Robare, et al. v. Allmerica Fin. Life Ins. & Annuity Co., First Allmerica Fin. Life Ins., Allmerica Fin. Corp., et al., No. 04-40077 (D. Mass.) ("Massachusetts Action"). See Allmerica's Motion to Transfer, dated June 28, 2004.[1] As set forth in the Motion to Transfer, the Massachusetts Action is brought against the *same* Allmerica entities, on behalf of a putative *national* class of Allmerica agents that subsumes the more narrow class alleged here. See Mem. in Supp. of Mot. to Transfer ("Transfer Mem.") at 3. Indeed, in the Massachusetts Action plaintiffs *affirmatively invoked the very federal court jurisdiction* that in the Motion to Remand they now deny. Compare Massachusetts

---

[1] Plaintiffs did not even respond to the Motion to Transfer, to which any opposition needed to be filed by July 6, 2004, under the deadlines set by the Court's Order on Motions Practice.

2

BOSTON 1952845v6

Complaint ¶¶ 7, 8 (plaintiffs alleging that District of Massachusetts has subject matter jurisdiction over and is proper venue for their dispute with Allmerica).[2]

Courts routinely transfer cases *before addressing* any pending motion to remand where, as here, a related case is pending in the transferee forum because it would be more efficient for a single court -- here, the District of Massachusetts -- to resolve any outstanding jurisdictional issues at the same time and place, in the full context of the parties' dispute. See, e.g., Stewart v. May Dept. Store Co., No. 02-2772, 2002 WL 31844906, at *2 n.1 (E.D. La. Dec. 12, 2002) (granting motion to transfer without ruling on motion to remand; *"Transfer prior to deciding a remand motion is particularly appropriate* in this case where a related suit is already pending in the transferee district") (emphasis supplied); Davidson v. Exxon Corp., 778 F. Supp. 909, 910 (E.D. La. 1991) (granting motion to transfer to forum where related actions pending without ruling on motion to remand due to "reasons of comity and judicial economy"); Barnes v. Resolution Trust Corp., No. 91-2900-LFO, 1992 WL 19113, at *1 (D.D.C. Jan. 17, 1992) (jurisdictional issue more easily decided in transferee district); see also Buchanan v. Manley, 145 F.3d 386, 389 & n.5 (D.C. Cir. 1998) (ruling that venue not proper in forum without deciding whether subject matter jurisdiction existed); Allison v. Allstate Ins. Co., No. 96-2757, 1997 WL 31175, at *1 (W.D. La. Jan. 22, 1997) (ruling by transferee court on motion to remand that was pending when case was transferred).

In a closely analogous case, Gould v. National Life Ins. Co., plaintiffs filed a putative national class action against another life insurer for the sale of variable and

---

[2] Transfer is particularly appropriate here because there is a serious question as to whether this Court even has *personal jurisdiction* over individual defendant Frederick H. Eppinger, Jr., who is a Massachusetts resident. See Transfer Mem. at 1 n.1. There is no allegation that Mr. Eppinger did anything in Pennsylvania. See e.g., National Precast Crypt Co. v. Dy-Core of Pennsylvania, Inc., 785 F. Supp. 1186, 1191 (W.D. Pa. 1992) (under fiduciary shield doctrine, "individuals performing acts in a state in their corporate capacity are not subject to the personal jurisdiction of the courts of that state for those acts").

3

other products similar to those sold by Allmerica. See 990 F. Supp. 1354, 1356 (N.D. Ala. 1998). Just as here, defendants removed to federal court and filed a motion to transfer to the District where the life insurer was headquartered and where related cases were pending (in that case, Vermont; here, Massachusetts). See id. Plaintiffs filed a motion to remand and requested that the court stay any transfer pending a decision on the remand motion. See id. at 1356 n.1. The court, however, refused to entertain the motion to remand, which it was entitled to do. Instead, the court transferred the entire case *prior* to addressing the remand, reasoning that the District of Vermont was better situated to construe its subject matter jurisdiction in the full context of the related class actions pending before it. See id. at 1362 (plaintiff not prejudiced by transfer because "remand law is a law of general federal application").

For essentially the same reasons, courts in the Third Circuit rule that the transferee court should decide pending remand motions in the context of multi-district litigation, where this issue arises frequently. See, e.g., Nekritz v. Canary Capital Partners, No. 03-5081(DRD), 2004 WL 1462035, at *4 (D.N.J. Jan. 14, 2004) (staying case pending ruling from MDL panel on motion to transfer; "judicial economy will be best served by leaving the remand motion to the transferee court"); Whelan v. Dow Corning Corp., No. 95-4957, 1995 WL 622774, at *1-2 (E.D. Pa. Oct. 17, 1995) (denying motion to remand without prejudice; plaintiff could renew jurisdictional motion before transferee court).[3] Indeed, transfer is particularly appropriate here because the

---

[3] The Third Circuit courts' inclination to let transferee courts decide any pending jurisdictional issues is consistent with the approach taken in other Circuits, and also favored by the Judicial Panel on Multidistrict Litigation. See, e.g., In re Ivy, 901 F.2d 7, 8 (2d Cir. 1990) (MDL panel can properly transfer case with pending motion to remand, which can be decided by transferee judge); In re UICI Assoc.-Group Ins. Litig., 305 F. Supp. 2d 1360, 1362 (Jud. Panel Multidist. Litig. 2004) (same); In re Nat'l Century Fin. Enters., Inc. Inv. Litig., 293 F. Supp. 2d 1375, 1377 (Jud. Pan. Multidist. Litig. 2003) (same); In re Western States Wholesale Natural Gas Antitrust Litig., 290 F. Supp. 2d 1376, 1378 (Jud. Pan. Multidist. Litig. 2003) (same).

4

Massachusetts Action is at a more advanced stage procedurally insofar as the District of Massachusetts already has set a briefing schedule for Motions to Dismiss. See Gould, 990 F. Supp. at 1363.

Finally, plaintiffs' opposition to this Court's federal jurisdiction -- at the same time they invoke federal court jurisdiction to sue Allmerica in the District of Massachusetts -- presents the very same "wastefulness of time, money and energy" that the transfer statute was "designed to prevent." See Continental Grain Co. v. The FBL-585, 364 U.S. 19, 26 (1960); Bank Express Int'l v. Kang, 265 F. Supp. 2d 497, 507 (E.D. Pa. 2003) (transfer ordered *sua sponte* to avoid "waste of judicial resources" from litigation of essentially same facts in two district courts).

## II. IF THE COURT REACHES THE MERITS, THE MOTION TO REMAND SHOULD BE DENIED.

If the Court elects to reach the merits of the Motion to Remand, the Motion should be denied because: (a) the law is clear that plaintiffs' state law class action "shall be" removed under SLUSA; and (b) the Court has the same diversity jurisdiction that plaintiffs invoked to sue Allmerica in the District of Massachusetts.

### A. This Case Is Removable Under SLUSA Because Variable Annuities And Life Insurance Are "Covered Securities."

Plaintiffs concede "it is true" that a state law class action "involving a covered security is to be removed" under the Securities Litigation Uniform Standards Act ("SLUSA"). See Motion to Remand at 6. Congress enacted SLUSA to avoid piecemeal or duplicative class action litigation in state court, such as these plaintiffs' simultaneous prosecution of putative national class actions against Allmerica in Massachusetts and Pennsylvania. See Lander v. Hartford Life & Annuity Ins. Co., 251 F.3d 101, 107-09 (2d Cir. 2001). The statute is explicit. "Any covered class action brought in any State court

involving a *covered security . . . shall be removable*" to federal court, 15 U.S.C. §§ 77p(c), 78bb(f)(2) (emphasis added), which is why Third Circuit and other courts "have interpreted SLUSA's preemptive provisions broadly." See, e.g., Dollinger v. Salomon Smith Barney, Inc., No. 00-CV-5607JAP, 2001 WL 1917976, at *1 (D.N.J. Mar. 7, 2001) (denying remand where, as here, lawsuit involved covered securities).

Plaintiffs cannot avoid SLUSA with the meritless assertion that the "annuities and variable life insurance products [at issue] are not 'covered securities.'" See Motion to Remand at 6 (citing no authority). Plaintiffs cite no law upon which to exclude variable products from SLUSA. See id. Nor could they. *Plaintiffs' argument has been flatly rejected by the Courts of Appeal* for the Second, Eighth, Ninth, and Eleventh Circuits, each of which *ruled as a matter of law that variable products are "covered securities"* under SLUSA. See, e.g., Lander, 251 F.3d at 109 (holding that variable annuities were "covered securities" under SLUSA); Dudek v. Prudential Secs., Inc., 295 F.3d 875, 878 (8th Cir. 2002) (variable annuities were "covered securities"); Patenaude v. The Equitable Life Ins. Soc'y of the United States, 290 F.3d 1020, 1024 (9th Cir. 2002) (variable annuities were "covered securities"); Herndon v. The Equitable Variable Life Ins. Co., 325 F.3d 1252, 1254 (11th Cir. 2003) (variable life insurance policy is a "covered security").[4]

---

[4] Plaintiffs' argument also collapses under the numerous District Courts that have been equally explicit that remand motions must be denied under SLUSA where, as here, plaintiffs' lawsuit involves variable life products or annuities. See, e.g., Winne v. The Equitable Life Assurance Soc'y, 315 F. Supp. 2d 404, 410-11 (S.D.N.Y. 2003) (denying motion to remand and holding that variable annuities were "covered securities" under SLUSA); Lasley v. New England Variable Life Ins. Cos., 126 F. Supp. 2d 1236, 1239 (N.D. Cal. 1999) (denying motion to remand and holding that variable life insurance policies were "covered securities" under SLUSA); In re Lutheran Bhd. Variable Prods. Co. Sales Practice Litig., 105 F. Supp. 2d 1037, 1040 (D. Minn. 2000) (denying motion to remand and holding that defendant's variable life insurance policies were "covered securities" under SLUSA because they were issued by an investment company registered under the Investment Company Act of 1940); Araujo v. John Hancock Life Ins. Co., 206 F. Supp. 2d 377, 381-82 (E.D.N.Y. 2002) (variable life insurance policies are "covered securities").

6

Plaintiffs' attempt to avoid SLUSA not only disregards the decisional authority, but also ignores that the prospectuses for the variable life insurance and variable annuities they allegedly sold in 2002 explicitly identify those products as "securities" that are registered with the U.S. Securities and Exchange Commission.[5] See Affidavit of Nathan H. Schmitt, Exhibit 1 – Prospectuses for Vari-Exceptional Life (First Allmerica Financial Flexible Premium Variable Life Insurance) dated May 1, 2002; Exhibit 2 – Prospectuses for Allmerica Advantage Variable Annuity (Allmerica Financial Flexible Payment Tax-Deferred Combination Variable and Fixed Annuity) dated May 1, 2002.[6]

Accordingly, removal of this case to federal court was proper under SLUSA.

## B. This Court Has The Same Diversity Jurisdiction That Plaintiffs Invoked To Sue Allmerica In The District Of Massachusetts.

Plaintiffs similarly fail to defeat this Court's diversity jurisdiction under 28 U.S.C. § 1332. They do not deny that there is complete diversity of citizenship. Instead, plaintiffs make an insubstantial challenge to the amount in controversy with an argument that mischaracterizes their own complaint and disregards the rest of the remand record.

For starters, plaintiffs make no attempt to distinguish this class action from the class action they filed against the same Allmerica entities in the District of Massachusetts. See Transfer Mem. at 3. Plaintiffs' own papers make plain that both lawsuits are based on, *inter alia*, a dispute arising from their securities sales and

---

[5] The cash values of variable life insurance policies and the annuitant's principal in variable annuities "must be registered with the SEC as securities under the Securities Act of 1933, codified at 15 U.S.C. § 77a et seq. . . . and must be offered through 'separate accounts' that must be registered with the SEC as investment companies under the Investment Company Act of 1940." See Winne, 315 F. Supp. 2d at 408.

[6] Apart from the specious claim that variable products are not securities, plaintiffs do not dispute that the state law class action they filed in the Court of Common Pleas is a "covered class action" subject to removal under SLUSA. See 15 U.S.C. § 78bb(f)(2). Plaintiffs' blithe assertion that the case does not involve "misrepresentations regarding the sale of securities" is irrelevant and wrong, Motion to Remand ¶ 20, because the Complaint itself alleges that defendants misled plaintiffs as to the compensation for selling the variable products *and* also alleges supposedly coercive and threatening conduct, thereby providing two independent bases to trigger SLUSA. Compare Pennsylvania Complaint ¶¶ 44, 49, with 15 U.S.C. § 78bb(f)(5)(E) (allegations of "manipulative or deceptive" conduct or made "untrue statements" trigger SLUSA removal).

7

compensation as Allmerica agents in 2002 and subsequent departure from Allmerica.[7] See id. at 2-3, 7-8. When they filed the Massachusetts Complaint, plaintiffs represented that their dispute with Allmerica satisfies the amount in controversy. See Massachusetts Complaint ¶ 7 ("amount of each Plaintiff's damages exceeds $75,000"). That Complaint and all of plaintiffs' other court papers are part of the removal record; plaintiffs' failure to acknowledge in their Motion to Remand that they filed the Massachusetts lawsuit does not change the fact that they did so. Nor can plaintiffs change that they are bound by what they told the District of Massachusetts. See New Hampshire v. Maine, 532 U.S. 742, 749 (2001) ("where a party assumes a certain position in a legal proceeding, and succeeds in maintaining that position, he may not thereafter, simply because his interests have changed, assume a contrary position").

Moreover, plaintiffs cannot avoid the consequences of the Massachusetts Complaint or otherwise retroactively amend the removal record simply because plaintiff Stephen Wedel (who filed both class actions against Allmerica) filed a notice of dismissal from this case last week. For purposes of removal, the only date that matters is the date the lawsuit was removed (June 15, 2004), at which time Mr. Wedel already had invoked diversity jurisdiction in the District of Massachusetts. See Transfer Mem.; Werwinski v. Ford Motor Co., 286 F.3d 661, 666 (3d Cir. 2002) (district court's determination of amount in controversy based on plaintiff's complaint *at time removal petition filed*).[8] Nor has dropping Mr. Wedel from the caption changed the fact that he

---

[7] Compare Motion to Remand at 1-2 (plaintiffs acknowledging that Pennsylvania Complaint seeks "money damages and injunctive relief in connection with their former employment with Allmerica"), with Massachusetts Complaint ¶ 17 (plaintiffs describing Massachusetts complaint as seeking compensation for having been "career agents who only sold Allmerica Life products").

[8] It is well-settled that a defendant's ability to remove must be evaluated based on a snapshot of the papers before the court at the time the removal petition is filed. See Dardovitch v. Haltzman, 190 F.3d 125, 135 (3d

8

and all plaintiffs are bound by the representation to the District of Massachusetts that *each* "similarly-situated" member of the national class (which includes the Pennsylvania plaintiffs) satisfies the amount in controversy such that their dispute with Allmerica is within the federal courts' jurisdiction.[9]

Finally, even if plaintiffs could disavow the class action that they filed against Allmerica in the District Court of Massachusetts, their attempt to minimize the amount in controversy -- they now claim their dispute is worth no more than $20,000 per plaintiff -- disregards the Complaint they filed in the Court of Common Pleas. See, e.g., Davis v. Travelers Ins. Co., 574 F. Supp. 188, 189-90 (W.D. Pa. 1983) (denying motion to remand where, as here, plaintiff attempted to alter position after filing of removal petition; "once federal jurisdiction has attached, any reduction either by a ruling of the court or by a concession . . . will not justify a remand"). There, plaintiffs allege that their right to recover turns on the suitability and appropriateness of their sales -- and Allmerica's acceptance of the "offer to sell" -- of variable life insurance and variable annuities in the amounts of $500,000 (Sean Ries), $500,000 (John Murray), and $2,700,000 (Philip Henry). See Pennsylvania Complaint ¶¶ 28-29, 36-39, 55-56. Thus, plaintiffs' own pleading acknowledges that they need to prove the legitimacy of securities transactions well in excess of $75,000.

---

Cir. 1999) (amount in controversy determined from good faith allegations in complaint); Wright, Miller & Cooper, Federal Practice and Procedure § 3702 (3d ed. 1998).

[9] Plaintiffs' attempt to break out a portion of their dispute with Allmerica as a Pennsylvania state court class action, while litigating the rest as a Massachusetts federal court class action disregards that remand under 28 U.S.C. § 1447 is not carte blanche to "waste judicial resources." See Applied Card Sys., Inc. v. Winthrop Resources Corp., No. 03-4104, 2003 WL 22351950, at *3 (E.D. Pa. Sept. 23, 2003). Nor is their duplicative state-federal litigation strategy supported by the cases they cite, which do not entitle plaintiffs to bring simultaneous class actions in multiple fora. See Meritcare v. St. Paul Mercury Ins. Co., 166 F.3d 214 (3d Cir. 1999); Batoff v. State Farm Ins. Co., 977 F.2d 848, 851 (3d Cir. 1992); Miller v. Liberty Mut. Group, 97 F. Supp. 2d 672, 674 (W.D. Pa. 2000). Finally, defendants do not seek to "aggregate" the damages sought by multiple plaintiffs; but instead rely on plaintiffs' own representations that *each* of them has a claim that exceeds $75,000. See Massachusetts Complaint ¶ 7.

## CONCLUSION

For the foregoing reasons, defendants respectfully request that the Court:

(i) Transfer the Motion to Remand, along with the entire case, to the District of Massachusetts (where plaintiffs concede that there is federal court jurisdiction);

(ii) In the alternative, deny the Motion to Remand under SLUSA and/or diversity jurisdiction under 28 U.S.C. § 1332;

(iii) Award defendants reasonable attorneys' fees and costs incurred in connection with their Motion and Transfer; and

(iv) Award any other relief appropriate under the circumstances.

Respectfully submitted,

MANION McDONOUGH & LUCAS, PC

By: _/s/_____
Robert D. Finkel, Esq.
Pa. I.D. #71130; Firm ID #786
Nathan H. Schmitt, Esq.
Pa. I.D. #89421
1414 U.S. Steel Tower, 600 Grant St.
Pittsburgh, PA 15219-2702
(412) 232-0200

Dated: July 30, 2004

Attorneys for Defendants,
ALLMERICA FINANCIAL CORP.,
ALLMERICA FINANCIAL LIFE
INSURANCE AND ANNUITY CO.
and FREDERICK H. EPPINGER, JR.

Of Counsel

Andrea J. Robinson, Esq.
Jonathan A. Shapiro, Esq.
Eric D. Levin, Esq.
Brett R. Budzinski, Esq.
Wilmer Cutler Pickering Hale & Dorr LLP
60 State Street
Boston, MA 02109
(617) 526-6000

10

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| SEAN D. RIES, JOHN R. MURRAY, PHILIP C. HENRY, STEPHEN H. WEDEL, and others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>ALLMERICA FINANCIAL CORPORATION, ALLMERICA FINANCIAL LIFE INSURANCE AND ANNUITY COMPANY, and FREDERICK H. EPPINGER, JR.,<br><br>Defendants. | Civil Action No. 04-0898 |

### AFFIDAVIT OF NATHAN H. SCHMITT

I, Nathan H. Schmitt, upon oath hereby say as follows:

1. My name is Nathan H. Schmitt. I have been retained and currently represent the above-captioned Defendants in this action.

2. A true and accurate copy of portions of the Prospectuses for Vari-Exceptional Life (First Allmerica Financial Flexible Premium Variable Life Insurance) dated May 1, 2002 is attached as Exhibit 1.

3. A true and correct copy of the portions of the Prospectuses for Allmerica Advantage Variable Annuity (Allmerica Financial Flexible Payment Tax-Deferred Combination Variable and Fixed Annuity) dated May 1, 2002 is attached as Exhibit 2.

_____
Nathan H. Schmitt

Dated: July 20, 2004





# Prospectuses

## May 1, 2002

### Vari-Exceptional Life

*First Allmerica Financial*
*Flexible Premium Variable Life Insurance*

We will be mailing you a paper update of this prospectus annually. If you would prefer to receive it electronically, please visit www.e-z-delivery.com to sign up.



**ALLMERICA**
FINANCIAL®

# FIRST ALLMERICA FINANCIAL LIFE INSURANCE COMPANY
## Worcester, Massachusetts

This Prospectus provides important information about Vari-Exceptional Life, an individual or group flexible premium variable life insurance policy issued by First Allmerica Financial Life Insurance Company to applicants who are Age 85 (currently 80 in New York) and under. The policies are funded through the VEL II Account, a separate investment account of this Company, and a fixed-interest account that is referred to as the General Account. **Please read this Prospectus carefully before investing and keep it for future reference.**

The Separate Account is subdivided into Sub-Accounts. Each Sub-Account invests exclusively in shares of one of the following Funds:

**Allmerica Investment Trust (Service Shares)**
AIT Core Equity Fund
AIT Equity Index Fund
AIT Government Bond Fund
AIT Money Market Fund
AIT Select Aggressive Growth Fund
AIT Select Capital Appreciation Fund
AIT Select Emerging Markets Fund
AIT Select Growth and Income Fund
AIT Select Growth Fund
AIT Select International Equity Fund
AIT Select Investment Grade Income Fund
AIT Select Strategic Growth Fund
AIT Select Strategic Income Fund
AIT Select Value Opportunity Fund

**Alliance Variable Products Series Fund, Inc. (Class B)**
Alliance Premier Growth Portfolio

**Delaware VIP Trust**
Delaware VIP International Value Equity Series

**Fidelity Variable Insurance Products Fund**
Fidelity VIP Equity-Income Portfolio
Fidelity VIP Growth Portfolio
Fidelity VIP High Income Portfolio
Fidelity VIP Overseas Portfolio

**Fidelity Variable Insurance Products Fund II**
Fidelity VIP II Asset Manager Portfolio

**Franklin Templeton Variable Insurance Products Trust (Class 2)**
FT VIP Franklin Large Cap Growth Securities Fund
FT VIP Franklin Small Cap Fund

**INVESCO Variable Investment Funds, Inc.**
INVESCO VIF Health Sciences Fund

**Janus Aspen Series (Service Shares)**
Janus Aspen Growth Portfolio

**T. Rowe Price International Series, Inc.**
T. Rowe Price International Stock Portfolio

The Policies are not suitable for short-term investment. Variable Life Policies involve risks including possible loss of principal. It may not be advantageous to replace existing insurance with the policy. This Life Policy is NOT: a bank deposit or obligation; or federally insured; or endorsed by any bank or governmental agency.

The Securities and Exchange Commission has not approved or disapproved these securities or determined that the information is truthful or complete. Any representation to the contrary is a criminal offense.

We offer a variety of variable life policies. They may offer features including investment options, fees and/or charges that are different from those in the policies offered by this Prospectus. The policies may be offered through different distributors. Upon request, your financial representative can show you information regarding other life policies offered by the Company. You can also contact us directly to find out more about these life policies.

This Prospectus can also be obtained from the Securities and Exchange Commission's website (http://www.sec.gov).

Correspondence may be mailed to: Allmerica Life, P.O. Box 8014, Boston, MA 02266-8014

**Dated May 1, 2002**

# DESCRIPTION OF THE COMPANY, THE SEPARATE ACCOUNT AND THE UNDERLYING FUNDS

### THE COMPANY

The Company, organized under the laws of Massachusetts in 1844, is the fifth oldest life insurance company in America. As of December 31, 2001, the Company and its subsidiaries had over $24.3 billion in combined assets and over $38.1 billion of life insurance in force. The Company is a wholly owned subsidiary of Allmerica Financial Corporation ("AFC"). The Company's principal office is located at 440 Lincoln Street, Worcester, Massachusetts 01653, telephone 508-855-1000 ("Principal Office").

The Company is subject to the laws of the Commonwealth of Massachusetts governing insurance companies and to regulation by the Commissioner of Insurance of Massachusetts. In addition, the Company is subject to the insurance laws and regulations of other states and jurisdictions in which it is licensed to operate.

The Company is a charter member of the Insurance Marketplace Standards Association ("IMSA"). Companies that belong to IMSA subscribe to a rigorous set of standards that cover the various aspects of sales and service for individually sold life insurance and annuities. IMSA members have adopted policies and procedures that demonstrate a commitment to honesty, fairness and integrity in all customer contacts involving sales and service of individual life insurance and annuity products.

### THE SEPARATE ACCOUNT

The Separate Account was authorized by vote of the Board of Directors of the Company on August 20, 1991. The Separate Account is registered with the Securities and Exchange Commission ("SEC") as a unit investment trust under the Investment Company Act of 1940 ("1940 Act"). Such registration does not involve the supervision of its management or investment practices or policies of the Separate Account or the Company by the SEC.

The assets used to fund the variable portion of the Policy are set aside in the Separate Account, and are kept separate from the general assets of the Company. Under Massachusetts law, assets equal to the reserves and other liabilities of the Separate Account may not be charged with any liabilities arising out of any other business of the Company. The Separate Account currently consists of 26 Sub-Accounts. You may have allocations in up to 20 Sub-Accounts at one time. Each Sub-Account is administered and accounted for as part of the general business of the Company, but the income, capital gains, or capital losses of each Sub-Account are allocated to such Sub-Account, without regard to other income, capital gains or capital losses of the Company or the other Sub-Accounts. Each Sub-Account invests exclusively in a corresponding Underlying Fund of one of the following investment companies:

- Allmerica Investment Trust

- Alliance Variable Products Series Fund, Inc.

- Delaware VIP Trust

- Fidelity Variable Insurance Products Fund

- Fidelity Variable Insurance Products Fund II

- Franklin Templeton Variable Insurance Products Trust

- INVESCO Variable Investment Funds, Inc.

20





**PROSPECTUSES**
*May 1, 2002*

Allmerica Advantage
Variable Annuity

*Allmerica Financial*
*Flexible Payment Tax-Deferred*
*Combination Variable and Fixed Annuity*

We will be mailing you a paper update of this prospectus annually. If you would prefer to receive it electronically, please visit www.e-z-delivery.com to sign up.



ALLMERICA
FINANCIAL®

ALLMERICA FINANCIAL LIFE INSURANCE AND ANNUITY COMPANY
FIRST ALLMERICA FINANCIAL LIFE INSURANCE COMPANY
Worcester, Massachusetts

This Prospectus provides important information about the Allmerica Advantage variable annuity contracts issued by Allmerica Financial Life Insurance and Annuity Company (in all jurisdictions except Hawaii and New York) or by First Allmerica Financial Life Insurance Company in Hawaii and New York. The contract is a flexible payment tax-deferred combination variable and fixed annuity offered on both a group and individual basis. **Please read this Prospectus carefully before investing and keep it for future reference. Annuities involve risks including possible loss of principal.**

A Statement of Additional Information dated May 1, 2002 containing more information about this annuity is on file with the Securities and Exchange Commission and is incorporated by reference into this Prospectus. A copy may be obtained free of charge by calling Allmerica Investments, Inc. at 1-800-533-7881. The Table of Contents of the Statement of Additional Information is listed on page 4 of this Prospectus. This Prospectus and the Statement of Additional Information can also be obtained from the Securities and Exchange Commission's website (http://www.sec.gov).

The Variable Account, known as Separate Account VA-K, is subdivided into Sub-Accounts. Each Sub-Account offered as an investment option invests exclusively in shares of the following funds:

**America Investment Trust (Service Shares)**
A T Core Equity Fund
A T Equity Index Fund
A T Government Bond Fund
A T Money Market Fund
A T Select Aggressive Growth Fund
A T Select Capital Appreciation Fund
A T Select Emerging Markets Fund
A T Select Growth Fund
A T Select Growth and Income Fund
A T Select International Equity Fund
A T Select Investment Grade Income Fund
A T Select Strategic Growth Fund
A T Select Strategic Income Fund
A T Select Value Opportunity Fund

**A M Variable Insurance Funds (Series I Shares)**
A M V.I. Aggressive Growth Fund
A M V.I. Blue Chip Fund
A M V.I. Premier Equity Fund

**A M Variable Insurance Funds (Series II Shares)**
A M V.I. Basic Value Fund
A M V.I. Capital Development Fund

**Alliance Variable Products Series Fund, Inc. (Class B)**
AllianceBernstein Small Cap Value Portfolio
AllianceBernstein Value Portfolio
Alliance Growth and Income Portfolio
Alliance Premier Growth Portfolio

**Delaware Group Premium Fund (Service Class)**
Delaware VIP Growth Opportunities Series

**Delaware Group Premium Fund**
Delaware VIP International Value Equity Series

**Eaton Vance Variable Trust**
Eaton Vance VT Floating-Rate Income Fund

**Fidelity Variable Insurance Products Fund**
Fidelity VIP Equity-Income Portfolio
Fidelity VIP Growth Portfolio
Fidelity VIP High Income Portfolio
Fidelity VIP Overseas Portfolio

**Fidelity Variable Insurance Products Fund II**
Fidelity VIP II Asset Manager Portfolio

**Fidelity Variable Insurance Products Fund II (Service Class 2)**
Fidelity VIP II Contrafund® Portfolio

**Fidelity Variable Insurance Products Fund III (Service Class 2)**
Fidelity VIP III Growth Opportunities Portfolio
Fidelity VIP III Mid Cap Portfolio
Fidelity VIP III Value Strategies Portfolio

**Franklin Templeton Variable Insurance Products Trust (Class 2)**
FT VIP Franklin Growth and Income Securities Fund
FT VIP Franklin Large Cap Growth Securities Fund
FT VIP Franklin Small Cap Fund
FT VIP Mutual Shares Securities Fund
FT VIP Templeton Foreign Securities Fund

**INVESCO Variable Investment Funds, Inc.**
INVESCO VIF Health Sciences Fund

(continuing to the next page)

This annuity is NOT a bank deposit or obligation; is NOT federally insured; and is NOT endorsed by any bank or governmental agency.

The Securities and Exchange Commission has not approved or disapproved these securities or determined that the information in this Prospectus is truthful or complete. Any representation to the contrary is a criminal offense.

DATED MAY 1, 2002

(cont.)

**Janus Aspen Series (Service Shares)**
Janus Aspen Growth Portfolio
Janus Aspen Growth and Income Portfolio

**MFS® Variable Insurance Trust℠ (Service Class)**
MFS® Mid Cap Growth Series
MFS® New Discovery Series
MFS® Total Return Series
MFS® Utilities Series

**Oppenheimer Variable Account Funds (Service Shares)**
Oppenheimer Capital Appreciation Fund/VA
Oppenheimer Global Securities Fund/VA
Oppenheimer High Income Fund/VA
Oppenheimer Main Street Growth & Income Fund/VA
Oppenheimer Multiple Strategies Fund/VA

**Pioneer Variable Contracts Trust (Class II)**
Pioneer Emerging Markets VCT Portfolio
Pioneer Real Estate Shares VCT Portfolio

**Scudder Variable Series II**
Scudder Technology Growth Portfolio
SVS Dreman Financial Services Portfolio

**T. Rowe Price International Series, Inc.**
T. Rowe Price International Stock Portfolio

The Fixed Account, which is part of the Company's General Account, is an investment option that pays an interest rate guaranteed for one year from the time a payment is received. Another investment option, the Guarantee Period Accounts, offers fixed rates of interest for specified periods ranging from 2 to 10 years. A Market Value Adjustment is applied to payments removed from a Guarantee Period Account before the end of the specified period. The Market Value Adjustment may be positive or negative. Payments allocated to a Guarantee Period Account are held in the Company's Separate Account GPA (except in California where they are allocated to the General Account).

The Company offers a variety of fixed and variable annuity contracts. These other contracts may offer features, including investment options, fees and/or charges that are different from those in the contract offered by this Prospectus. The Company also offers a variable annuity contract with no surrender charge. The other contracts may be offered through different distributors. Upon request, your financial representative can show you information regarding other annuity contracts offered by the Company. You can also contact the Company directly to find out more about these annuity contracts.

## CERTIFICATE OF SERVICE

I hereby certify that a true copy of the above document was served on this 20th day of July, 2004 by first-class mail, postage prepaid, upon the following counsel of record:

William C. Ries, Esq.
Tucker Arensberg, P.C.
1500 One PPG Place
Pittsburgh, PA 15222

Jonathan McAnney, Esq.
Ron R. Parry, Esq.
Parry, Deering, Futschler & Sparks, P.S.C.
128 East Second Street
Covington, KY 41011-2618

_/s/_____

BOSTON 1952845v6