UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS
CENTRAL DIVISION

| | |
|---|---|
| SEAN D. RIES, JOHN R. MURRAY, PHILIP C. HENRY, and others similarly situated,<br><br>     Plaintiffs,<br><br>     v.<br><br>ALLMERICA FINANCIAL CORPORATION, ALLMERICA FINANCIAL LIFE INSURANCE AND ANNUITY COMPANY, and FREDERICK H. EPPINGER, JR.,<br><br>     Defendants. | Civil Action No. 4:04-cv-40179(FDS) |

**MEMORANDUM IN SUPPORT OF**
**<u>DEFENDANTS' MOTION TO DISMISS</u>**


Andrea J. Robinson (BBO No. 556337)
Jonathan A. Shapiro (BBO No. 567838)
Eric D. Levin (BBO No. 639717)
Brett R. Budzinski (BBO No. 655238)
Wilmer Cutler Pickering Hale and Dorr LLP
60 State Street
Boston, MA 02109
(617) 526-6000

*Attorneys for Allmerica Financial Corporation, Allmerica Financial Life Insurance and Annuity Company, and Frederick H. Eppinger, Jr.*

Dated:  November 5, 2004

# CONTENTS

INTRODUCTION .................................................................................................................1

ALLEGATIONS OF COMPLAINT ....................................................................................2

ARGUMENT..........................................................................................................................3

I.     PLAINTIFFS' CLAIMS ARE PREEMPTED BY SLUSA. ......................................3

II.    PLAINTIFFS' CLAIMS WOULD NOT SURVIVE DISMISSAL EVEN IF THEY WERE NOT PREEMPTED BY SLUSA. ..................................................................5

        A.     The Statute of Frauds Bars Plaintiffs' Breach of Contract Claim. ..........................5

        B.     Plaintiffs Fail to State a Claim Under the Pennsylvania Wage Act. ......................9

             1.     Plaintiffs Are Not "Employees" Under the Wage Act. ...............................9

             2.     Plaintiffs Cannot Base a Wage Act Claim on a Non-Actionable Breach of Contract. ..................................................................................10

             3.     Plaintiffs State No Claim Against Mr. Eppinger .......................................11

CONCLUSION......................................................................................................................12

# AUTHORITIES

Federal Cases

*Araujo v. John Hancock Life Ins. Co.*,
  206 F. Supp. 2d 377 (E.D.N.Y. 2002) ...................................................................................4

*Borrell v. Weinstein Supply Corp.*,
  No. Civ. A. 94-2857, 1994 WL 530102 (E.D. Pa. Sept. 27, 1994) .........................................11

*Cape Ann Investors LLC v. Lepone*,
  296 F. Supp. 2d 4 (D. Mass. 2003) ........................................................................................4

*Davis v. Dawson, Inc.*,
  15 F. Supp. 2d 64 (D. Mass. 1998) ........................................................................................4

*Dudek v. Prudential Securities, Inc.*,
  295 F.3d 875 (8th Cir. 2002) .................................................................................................4

*Herndon v. Equitable Variable Life Ins. Co.*, ...........................................................................4
325 F.3d 1252 (11th Cir. 2003)

*General Electric v. Lyon*,
  894 F. Supp. 544 (D. Mass. 1995) .......................................................................................10

*Knight v. United Farm Bureau Mut. Ins. Co.*,
  950 F.2d 377 (7th Cir. 1991) ...............................................................................................10

*Lander v. Hartford Life Ins. Co.*,
  251 F.3d 101 (2d Cir. 2001) ..................................................................................................4

*Oestman v. National Farmers Union Ins. Co.*,
  958 F.2d 303 (10th Cir. 1992) .............................................................................................10

*Orrell v. Umass Mem. Med. Ctr., Inc.*,
  203 F. Supp. 2d 52, 68 (D. Mass. 2002) ................................................................................8

*Resolution Trust Co. v. Driscoll*,
  985 F.2d 44 (1st Cir. 1993)....................................................................................................9

*Riley v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*,
  292 F.3d 1334 (11th Cir. 2002).............................................................................................4

*Schweiger v. Farm Bureau Ins. Co. of Nebraska*,
  207 F.3d 480 (8th Cir. 2000) ...............................................................................................10

*Speakman v. Allmerica Fin. Life Ins. & Annuity Co.*,
  No. Civ. 4:04-cv-40077-FDS (D. Mass.) .............................................................................10

*United States ex rel. Karvelas v. Melrose-Wakefield Hosp.*,
  360 F.3d 220 (1st Cir. 2004)..................................................................................................9

*Watterson v. Page*,
  987 F.2d 1 (1st Cir. 1993)......................................................................................................9

*Weldon v. Kraft, Inc.*,
  896 F.2d 793 (3d Cir. 1990) ................................................................................................10

*Winne v. Equitable Life Assurance Soc'y*,
  315 F. Supp. 2d 404 (S.D.N.Y. 2003) ...................................................................................4

State Cases

*Alexander v. Berman*,
  29 Mass. App. Ct. 458 (1990)............................................................................................5, 7

*Bay Colony Mktg. Co. v. Fruit Salad, Inc.*,
  41 Mass. App. Ct. 662 (1996)............................................................................................6, 7

*Cantell v. Hill Holiday Connors Cosmopulos*,
  55 Mass. App. Ct. 550 (2002)........................................................................................5, 6, 7

*Christo v. Draper*,
  No. 00-P-1530, 2002 WL 1492230 (Mass. App. Ct. July 12, 2002) ....................................8

*Cox v. Thornton Assocs., Inc.*,
  No. CIV. A. 97-00178, 1998 WL 470508 (Mass. Super. Ct. Aug. 4, 1998)........................5

*Evans v. Multicon Constr. Corp.*,
  30 Mass. App. Ct. 728 (1991)..............................................................................................11

*North East Tech. Sales, Inc. v. Barshad*,
  No. 99-1427-B, 2000 WL 1252184 (Mass. Super. Ct. Aug. 14, 2000) .....................5, 7, 11

*Protective Life Ins. Co. v. Sullivan,*
  425 Mass. 615 (1997)   ..........................................................................................................7

*Turk v. Communication Design Inc.*,
  10 Pa. D. & C.4th 42 (Pa. Ct. Cm. Pleas 1991) ...................................................................9

Federal Statutes

15 U.S.C. §§ 77p(b)………...................................................................................................1, 4

15 U.S.C. §§ 78p(c)………........................................................................................................4

15 U.S.C. §§ 78p(f)………........................................................................................................4

State Statutes

43 Pa. Cons. Stat. §260.1 et seq. ................................................................................................. 4, 11

Mass. Gen. Laws ch. 259, § 7 ..................................................................................................... passim

Federal Rules

Federal Rule of Civil Procedure 12(b)(6) ........................................................................................ 1

Federal Rule of Civil Procedure 8(a) ............................................................................................... 9

Defendants Allmerica Financial Corporation ("AFC"), Allmerica Financial Life Insurance and Annuity Company ("AFLIAC") (collectively "Allmerica"), and Frederick H. Eppinger, Jr. submit this memorandum in support of their Motion to Dismiss plaintiffs' Class Action Complaint (the "Complaint") for failure to state a claim upon which relief can be granted under Federal Rule of Civil Procedure 12(b)(6).

## INTRODUCTION

Plaintiffs are three former Allmerica agents who allege that they entered into an oral contract with AFC and/or AFLIAC in September 2002, which provided that they would receive "100% commissions" for selling "non-proprietary products" (*i.e.*, life insurance and annuities administered by a company other than Allmerica). Plaintiffs claim that Allmerica paid 100% commissions from October 1, 2002 through November 15, 2002, but then stopped doing so for "replacement" sales (whereby Allmerica products were exchanged for non-proprietary products) and allege that defendants attempted to recoup some commissions that had been paid previously. Plaintiffs bring claims for breach of contract and a violation of the Pennsylvania Wage Payment and Collection Law ("Wage Act"). Both claims fail as a matter of law.

Specifically, plaintiffs' claims are preempted by the Securities Litigation Uniform Standards Act ("SLUSA"), 15 U.S.C. §§ 78p(b), 78bb(f)(1), because this Court already has ruled (in denying plaintiffs' motion to remand) that this is a "covered class action" under the statute. Even if SLUSA did not apply, the statute of frauds bars plaintiffs' attempt to sue for breach of an oral contract. Plaintiffs cannot state a Wage Act claim because as "independent contractors" they lack standing and, in any event, such a claim requires plaintiffs to plead an enforceable employment contract, not an unenforceable oral agreement. As set forth below, the Court should dismiss plaintiffs' Complaint with prejudice.

## ALLEGATIONS OF COMPLAINT[1]

AFC and AFLIAC are Delaware corporations with offices located in Worcester, Massachusetts. (Compl. ¶ 5.) Frederick H. Eppinger is the President and Chief Executive Officer ("CEO") of AFC. (Id. ¶ 6.)

Plaintiffs are former financial advisors of Allmerica, who provided financial planning services for their clients and "marketed and sold a variety of Allmerica annuity, insurance, and investment products to clients," for which they were paid a commission based on the total dollar value of the sale. (Id. ¶¶ 8, 12, 13, 26-27.) As Allmerica agents, plaintiffs sold both "proprietary products," which were annuities and life insurance policies administered by Allmerica, and "non-proprietary products," which were annuities and life insurance products administered by a company other than Allmerica. (Id. ¶¶ 28-29.) When plaintiffs sold a non-proprietary product, the company administering that product paid a commission to Allmerica, and Allmerica historically paid 65% of that commission to the agent responsible for the non-proprietary sale and retained the balance of 35%. (Id. ¶ 29.)

Plaintiffs allege that during a September 2002 meeting, the managing director of Allmerica's Pittsburgh office announced that, effective October 1, 2002, Allmerica would pay agents in the Pittsburgh region 100% of the commissions (up from 65%) for their sales of non-proprietary variable annuities and life insurance (the "100% commission arrangement"). (Id. ¶ 30.) Plaintiffs also allege that the 100% commission arrangement was "announced" in e-mails, conference calls, and individual meetings. (Id. ¶ 32.)

Plaintiffs claim that over the next six weeks (until November 15, 2002), they arranged for many of their existing variable life and annuity customers to replace their existing proprietary

---

[1] For purposes of this Motion only, defendants recite the factual allegations set forth in the Complaint. See Fed. R. Civ. P. 12(b)(6). In so doing, defendants admit neither the veracity of plaintiffs' allegations, nor their relevance.

products (with Allmerica) with non-proprietary products (with other companies) and that Allmerica paid 100% commissions on those transactions. (Id. ¶¶ 37-39, 41.) However, plaintiffs claim that on November 15, 2002, Allmerica terminated the 100% commission arrangement on the replacement business (*i.e.*, transfers of Allmerica accounts to non-proprietary accounts), retroactive two weeks to November 1, 2002. (Id. ¶¶ 43-44.) Plaintiffs further allege that Allmerica attempted to recoup some of the commissions paid to plaintiffs under the 100% commission arrangement during those weeks by deducting amounts from commissions that otherwise would have been paid to plaintiffs. (Id. ¶¶ 45-54.)

On May 12, 2004, plaintiffs filed this lawsuit purportedly on behalf of a putative class of Allmerica agents who sold non-proprietary products through Allmerica between October 1, 2002 and November 15, 2002 pursuant to the 100% commission arrangement, and (1) did not receive the commissions to which they claim they were entitled, (2) were required to return their commissions, or (3) had their commissions "charged back" against their trail commissions. (Id. ¶ 14.) In Count I, plaintiffs allege that Allmerica breached a "contract" by attempting recoup commissions paid to plaintiffs pursuant to the 100% commission arrangement. (See id. ¶¶ 55-58.) In Count II, plaintiffs allege that Allmerica and Mr. Eppinger violated the Pennsylvania Wage Payment and Collection Law, 43 Pa. Cons. Stat. § 260.1, *et seq.* (See id. ¶¶ 59-63.)

## ARGUMENT

### I. PLAINTIFFS' STATE LAW CLAIMS ARE PREEMPTED BY SLUSA.

The Complaint should be dismissed in its entirety because it asserts two purportedly state law claims that are preempted by SLUSA. This Court already has ruled that the Complaint was properly removed to federal court under SLUSA because it "arises out of the sale of annuities and variable life insurance products, both of which are 'covered securities' for purposes of the

SLUSA." See Order dated October 6, 2004, at 4 (denying motion to remand).[2]  That Order also compels dismissal because the scope of SLUSA preemption is identical to that for removal. See 15 U.S.C. §§ 78p(c), 78bb(f)(2); see also 15 U.S.C. §§ 77p(b), 77bb(f)(1) ("No covered class action . . . may be maintained in any State or Federal court").

Simply put, because this state law class action has been found to have been properly removed under SLUSA, by definition it must be dismissed under SLUSA (thereby leaving plaintiffs with whatever federal remedies they are entitled to assert). See, e.g., Cape Ann Investors LLC v. Lepone, 296 F. Supp. 2d 4, 10 (D. Mass. 2003) (state claims dismissed under SLUSA; "Congress [made] federal court the exclusive venue" for class actions covered by SLUSA *"by providing for removal of state actions to federal court, and requiring the immediate dismissal of 'covered lawsuits.'"*) (quoting Riley v. Merrill Lynch, Pierce, Fenner & Smith, Inc., 292 F.3d 1334, 13420 (11th Cir. 2002) (emphasis supplied)); Winne v. Equitable Life Assurance Soc'y, 315 F. Supp. 2d 404, 416 (S.D.N.Y. 2003) (granting motion to dismiss; "Because the removal and dismissal provisions of SLUSA are intertwined, *once the Court determines that federal subject matter jurisdiction exists pursuant to the statute, it is a short step to dismissal of the state-law claims"*) (emphasis supplied); Araujo v. John Hancock Life Ins., 206 F. Supp. 2d 377, 380 (E.D.N.Y. 2002) (granting motion to dismiss; *"SLUSA directs the removal and dismissal* of class actions" within its scope) (emphasis supplied).

---

[2] Plaintiffs cannot relitigate the Court Order that held that each of the elements required for SLUSA removal and dismissal has been satisfied. See Davis v. Dawson, Inc., 15 F. Supp. 2d 64, 117 (D. Mass. 1998) (under law of the case doctrine, "once a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case"). In any event, the Order is correct. First, this lawsuit is a "covered" class action. Compare 15 U.S.C. § 78bb(f)(5)(B)(i)(II) ("covered class action" includes any lawsuit in which "damages are sought on behalf of more than 50 persons or prospective class members"), and Order at 3, with Compl. ¶ 15 ("The class consists of hundreds of individuals"). Second, both of plaintiffs' claims were brought under state "statutory or common law" based at least in part on alleged misrepresentations and manipulation. See Order at 3-4; Compl. ¶¶ 43-50, 55-58, 59-63. Third, variable annuities and variable life insurance as a matter of law are "covered securities" under SLUSA. See Order at 3 (citing Lander v. Hartford Life Ins. Co., 251 F.3d 101 (2d Cir. 2001); Dudek v. Prudential Securities, Inc., 295 F.3d 875 (8th Cir. 2002); Herndon v. Equitable Variable Life Ins. Co., 325 F.3d 1252 (11th Cir. 2003)).

## II.   PLAINTIFFS' CLAIMS WOULD NOT SURVIVE DISMISSAL EVEN IF THEY WERE NOT PREEMPTED BY SLUSA.

### A.   The Statute of Frauds Bars Plaintiffs' Breach of Contract Claim.

Plaintiffs' contract claim -- an attempt to sue under an unwritten commission agreement -- is barred by the Massachusetts statute of frauds, which specifically requires that any such agreements to compensate "brokers" be in writing:

> *Any agreement to pay compensation for service as a broker or finder . . . shall be void and unenforceable unless such agreement is in writing, signed by the party to be charged therewith, or by some other person authorized . . . .* The provisions of this section shall apply to a contract implied in fact or in law to pay reasonable compensation but shall not apply to a contract to pay compensation for professional services as an attorney-at-law or licensed real estate broker or real estate salesman acting in their professional capacity.

Mass. Gen. Laws ch. 259, § 7 (emphasis supplied).

This "special business brokerage Statute of Frauds manifested a legislative purpose to discourage claims for commission based on conversations which persons heard differently or remembered differently." See Alexander v. Berman, 29 Mass. App. Ct. 458, 462 (1990). It "should be interpreted broadly to further its policy determination that agreements for compensation for certain services be in writing." See Cantell v. Hill Holiday Connors Cosmopulos, 55 Mass. App. Ct. 550, 552-53 (2002). For this reason, Massachusetts courts dismiss lawsuits brought to enforce unwritten commission arrangements. See, e.g., North East Tech. Sales, Inc. v. Barshad, No. 99-1427-B, 2000 WL 1252184, at *2 (Mass. Super. Ct. Aug. 14, 2000) (dismissing breach of contract claim based on oral agreement to pay 20% sales commission as unenforceable under Chapter 259, § 7); Cox v. Thornton Assocs., Inc., No. CIV. A. 97-00178, 1998 WL 470508, at *3 (Mass. Super. Ct. Aug. 4, 1998) (dismissing breach of contract claim based on oral agreement to pay sales commissions as barred by Chapter 259, § 7).

- 5 -

Count I must be dismissed because Chapter 259, § 7 forecloses plaintiffs' attempt to sue for breach of an alleged oral contract to pay "100% commissions." There is no question that plaintiffs are "brokers or finders" under Chapter 259, § 7. A "broker" is "an agent who acts as an intermediary or negotiator, especially between prospective buyers and sellers; a person employed to make bargains and contracts between other persons in matters of trade, commerce, and navigation." Cantell, 55 Mass. App. Ct. at 553 (statutory term "broker" not a technical term and should be given ordinary meaning and construed according to common usage). A "finder" is "an intermediary who brings together parties for a business opportunity." Id. at 553.[3]

Plaintiffs plead themselves into the "broker or finder" definition. They allegedly served as "intermediaries" between their clients, who were prospective buyers of life insurance and annuities, and Allmerica, which sold those products. See, e.g., Compl. ¶ 13 (alleging that plaintiffs "marketed and sold a variety of Allmerica annuity, insurance, and investment products to clients"). Plaintiffs also allege that they "were compensated based upon a system comprised of commissions," calculated as a "percentage of the total dollar value of products purchased by the client." See id. ¶¶ 26, 27 (alleging that plaintiffs "paid commissions as a result of client's purchasing annuities and life insurance policies, mutual funds, stock sales, and other services"). On similar allegations, Massachusetts courts have found plaintiffs to be "brokers or finders" under Chapter 259, § 7. See Cantell, 55 Mass. App. Ct. at 554 (holding that employment agency was "broker" because "its claim for services is predicated upon its serving as an intermediary that was willing to negotiate an employment contract between [employer and employment candidate]"); Bay Colony Mktg. Co. v. Fruit Salad, Inc., 41 Mass. App. Ct. 662, 662-64 (1996)

---

[3] "A finder differs from a broker-dealer because the finder merely brings two parties together to make their own contract, while a broker-dealer usually participates in the negotiations. A finder locates, introduces, and brings parties to a transaction together, while a broker does more, attempting to bring the parties to an agreement." See Cantell, 55 Mass. App. at 553-54.

(oral agreement for solicitation of new accounts and sales territories for seller's food products in return for commission within statute of frauds); Alexander, 29 Mass. App. Ct. at 461-62 (plaintiff who introduced defendant seller to potential buyer of business was "broker").[4]

It is equally clear that plaintiffs are suing to enforce an oral "contract" that, even if it existed, would be "void and unenforceable" under Mass. Gen. Laws ch. 259, § 7. Plaintiffs contend that defendants contracted to pay 100% commissions (*i.e.*, "compensation") for their sales of non-proprietary products (*i.e.*, "services as a broker or finder"), Compl. ¶ 30, yet *nowhere* does the Complaint allege that any such deal was memorialized in a written contract signed by Allmerica as required by Chapter 259, § 7. To the contrary, plaintiffs affirmatively allege that the supposed 100% commission arrangement was *oral*. For example, plaintiffs claim that defendants "*announced* the implementation" of the 100% commission arrangement at a meeting in September 2002, and thereafter "promulgated and announced" the deal in unsigned and unidentified e-mails, conference calls, and individual meetings. See Compl. ¶ 30 (emphasis supplied), ¶ 32. This is not sufficient. See North East Tech. Sales, 2001 WL 1252184, at *1 (dismissing contract claim under statute of frauds where, as here, complaint alleged that agreement was set forth in "various e-mails" and an unsigned draft of contract).

Plaintiffs certainly have not satisfied the signed writing requirement by attaching to their Complaint two unsigned documents that, if anything, demonstrate why ch. 259, § 7 requires that commission agreements be in writing. Exhibit A is an e-mail reminding recipients to attend a

---

[4] Significantly, insurance agents and brokers do not fall within one of Chapter 259, § 7's express statutory exceptions for "an attorney-at-law or licensed real estate broker or real estate salesman." Indeed, the legislature's inclusion of the express statutory exceptions "strengthens the inference that *no other exception was intended*." Cantell, 55 Mass. App. Ct. at 553 (emphasis supplied) (quoting Protective Life Ins. Co. v. Sullivan, 425 Mass. 615, 620 (1997)). For this reason, courts routinely dismiss contract claims brought by "brokers" and "finders" who -- like plaintiffs here -- do not fall within the statutory exceptions. See, e.g., Cantell, 55 Mass. App. Ct. at 553 (dismissing contract claim by employment agent who did not fall within any of the statutory exceptions); Bay Colony, 41 Mass. App. Ct. at 667 (food broker's contract claim dismissed under Chapter 259, § 7; no basis in statute to conclude that "Legislature intended to obviate disputes over claimed commissions for services rendered in certain commercial brokerage contexts, but not others").

meeting and conference call at a local country club but says nothing about the supposed agreement upon which plaintiffs base their claim.  See Compl., Ex. A.  Exhibit B is a letter to one plaintiff that references a commission chargeback, but does not refer to any agreement to pay any particular amount of commissions, much less any obligation by any defendant to pay 100% commissions on replacements of proprietary products with non-proprietary ones.  See Compl., Ex. B.  Thus, even taken together, these documents do not approach an enforceable contract.  See Christo v. Draper, No. 00-P-1530, 2002 WL 1492230, at *1 (Mass. App. Ct. July 12, 2002) (holding that two documents did not satisfy statute of frauds: first document not in compliance where, as here, not signed or initialed by party; second document not in compliance where, as here, it made no mention of any payment to plaintiff in exchange for finder services).

     Finally, plaintiffs' attempt to sue for breach of an alleged oral contract is particularly improper because they do not specify the party with whom they claim to have contracted.  They claim only to have been employed by "Allmerica," a term they define in the Complaint to include AFC and AFLIAC without ever identifying which entity allegedly was bound to (and allegedly breached) the 100% commission obligation.  See Compl. ¶ 5.  Even under a Rule 8(a) notice pleading standard, plaintiffs are required to identify the party that is allegedly bound.  See Orrell v. Umass Mem. Med. Ctr., Inc., 203 F. Supp. 2d 52, 68 (D. Mass. 2002) (dismissing breach of contract claim where plaintiff failed to allege privity of contract with defendants). Plaintiffs' failure to plead the other side to the contract is also conspicuous because, although they sued AFC and AFLIAC, the documents they filed with the National Association of

Securities Dealers ("NASD") identify neither as their employer, but instead say they worked for Allmerica Investments, Inc., which they have not sued.[5]

### B. Plaintiffs Fail to State a Claim Under the Pennsylvania Wage Act.

Plaintiffs also fail to state a claim under the Pennsylvania Wage Act (Count II) because plaintiffs *(i)* are not "employees" with standing to sue under the Wage Act; and *(ii)* cannot reinvent an inactionable contract claim as one under the Wage Act.

#### 1. *Plaintiffs Are Not "Employees" Under the Wage Act.*

Plaintiffs cannot state a claim under the Wage Act because only "employees" have standing to sue under the statute, and there are no factual allegations that they were employees of AFI, as opposed to AFLIAC, or of Mr. Eppinger personally. See 43 Pa. Stat. § 260.9a(a). Plaintiffs' bald assertion of having been "employees" of all defendants is inadequate. See Resolution Trust Co. v. Driscoll, 985 F.2d 44, 48 (1st Cir. 1993) (affirming dismissal of complaint; in passing on motion to dismiss, although factual allegations are assumed to be true, "this tolerance does not extend to legal conclusions or to bald assertions").[6] Although plaintiffs allegedly were Allmerica agents and clearly are suing over a dispute that arises out of a master-servant or "employment" relationship, the Wage Act does not apply to all employment relationships -- it only provides a remedy to those who were "employees" and excludes those who provided services as "independent contractors." See Turk v. Communication Design Inc.,

---

[5] As registered representatives licensed to sell securities (such as variable annuities and life insurance), plaintiffs are obligated to file public Forms U-4 and BD identifying their employer. See 15 U.S.C. § 78o. As a matter of law, the Court is entitled to consider publicly-filed documents on a motion to dismiss. See, e.g., Watterson v. Page, 987 F.2d 1, 4 (1st Cir. 1993) (district court properly considered public documents in granting motion to dismiss). NASD-compiled information based on plaintiffs' U-4 and BD forms are attached hereto as Exhibits A (Ries), B (Murray), and C (Henry).

[6] That is, plaintiffs parrot the statute by referring to themselves as "employees," Compl. ¶ 26, but nowhere is that assertion supported by factual allegations. Even under the liberal standard of Fed. R. Civ. P. 8(a), plaintiffs cannot satisfy their pleading burden with unsupported legal conclusions. See United States ex rel. Karvelas v. Melrose-Wakefield Hosp., 360 F.3d 220, 240 (1st Cir. 2004) (granting motion to dismiss; "[s]imply parroting the language of a statutory cause of action, without some factual support, is not sufficient to state a claim").

10 Pa. D. & C.4th 42, 46 (Pa. Ct. Cm. Pleas 1991) (granting demurrer to plaintiff's Wage Act claim where, as here, plaintiff was independent contractor, and not defendant's employee); see also General Electric Co. v. Lyon, 894 F. Supp. 544, 553 (D. Mass. 1995) (granting motion to dismiss statutory counterclaim where, as here, defendant failed to allege facts that would support statute's "critical elements").[7]

Plaintiffs certainly cannot hide behind a boilerplate "employee" allegation now that, in related litigation, they denied they were "employees" but instead represented that they were "independent contractors." Speakman v. Allmerica Fin. Life Ins. & Annuity Co., No. Civ. 4:04-cv-4007-FDS (D. Mass.), Pls.' Mem. in Opp. to Mot. to Dismiss at 22. Nor is this semantics; courts have found that insurance agents like plaintiffs are independent contractors, not employees. See, e.g., Schweiger v. Farm Bureau Ins. Co. of Nebraska, 207 F.3d 480 (8th Cir. 2000) (insurance agent held to be independent contractor); Knight v. United Farm Bureau Mut. Ins. Co., 950 F.2d 377 (7th Cir. 1991) (same); Oestman v. National Farmers Union Ins. Co., 958 F.2d 303 (10th Cir. 1992) (same).[8]

### 2. *Plaintiffs Cannot Base a Wage Act Claim on a Void and Unenforceable Oral Contract.*

Even if plaintiffs had standing to sue under the Wage Act, Count II must be dismissed because they have failed to allege breach of an enforceable contract. That is, the Pennsylvania Wage Act "does not create a right to compensation. Rather, it provides a statutory remedy when the employer breaches a contractual obligation to pay earned wages. *The contract between the parties governs in determining whether specific wages are earned.*" Weldon v. Kraft, Inc., 896

---

[7] Thus, the Pennsylvania Wage Act is distinguished from Mass. Gen. Laws ch. 93A, which excludes the entire universe of "employment relationships" and does not distinguish between "employee" and "independent contractor."

[8] Indeed, even if "independent contractors" were deemed "employees" for purposes of the Wage Act, as noted above, plaintiffs never identified which of the two entities they sued employed them, and have *not* sued the entity (Allmerica Investments, Inc.) that they identified as their employer in the documents they filed with the NASD. See Exs. A, B, C.

F.2d 793, 801 (3d Cir. 1990) (emphasis supplied) (affirming dismissal of Wage Act claim where, as here, there was no express contractual obligation to pay wages).  Here, plaintiffs transparently rely on their deficient breach of contract allegations.  See Compl. ¶ 62 ("By breaching its contracts with Plaintiffs for commissions as outlined above, Defendants are in breach of the Pennsylvania Wage Payment and Collection Law.").  Plaintiffs cannot sue directly for breach of that "void and unenforceable" oral contract, see supra § II.A., nor as the basis for a Wage Act claim.  See Borrell v. Weinstein Supply Corp., No. Civ. A. 94-2857, 1994 WL 530102, at *7 (E.D. Pa. Sept. 27, 1994) (where plaintiff's underlying breach of employment contract failed to state claim for lack of sufficiently definite terms, court dismissed Wage Act claim; plaintiff "failed thus far to properly allege a claim based on breach of contract.  Accordingly, he has failed to state a claim under the [Wage Act].").

### 3. *Plaintiffs State No Claim Against Mr. Eppinger*

The Wage Act claim against Frederick Eppinger should be dismissed for the additional reason that he is not alleged to have done anything other than serve as the CEO and President of Allmerica Financial Corporation.  See Compl. ¶ 6.  As a matter of law, an individual's status as a corporate officer does not make him or her personally liable for the corporation's contracts, and certainly not for those of the corporation's subsidiaries.  See, e.g., North East Tech. Sales, 2000 WL1252184, at *2-3 (dismissing contract claim against officer of company because officers cannot be held personally liable on company's contracts "except in rare particular situations to prevent gross inequity") (quoting Evans v. Multicon Constr. Corp., 30 Mass. App. Ct. 728, 732

(1991)).[9]  Plaintiffs implicitly recognize this because they have not brought their contract claim against Mr. Eppinger.  Because he cannot be liable on plaintiffs' breach of contract claim, *a fortiori*, the Wage Act claim against Mr. Eppinger should be dismissed.

### CONCLUSION

For the foregoing reasons, this Court should dismiss plaintiffs' Complaint, with prejudice.

Respectfully submitted,

ALLMERICA FINANCIAL CORPORATION, ALLMERICA FINANCIAL LIFE INSURANCE AND ANNUITY CO., and FREDERICK H. EPPINGER, JR.

By their attorneys,

/s/ Brett R. Budzinski
Andrea J. Robinson (BBO# 556337)
Jonathan A. Shapiro (BBO# 567838)
Eric D. Levin (BBO# 639717)
Brett R. Budzinski (BBO# 655238)
Wilmer Cutler Pickering Hale and Dorr LLP
60 State Street
 Boston, MA 02109
(617) 526-6000

Dated: November 5, 2004

---

[9] Plaintiffs make no attempt to pierce the corporate veil to hold Mr. Eppinger personally liable for the corporations's contracts, which would require allegations of: (1) active and pervasive control of related business entities by the same controlling persons and a fraudulent or injurious consequences as a result of those relationships; or (2) confused intermingling of activity if two or more corporations engaged in a common enterprise with substantial disregard of the separate nature of the corporate entities, or serious ambiguity about the manner and capacity in which the various corporations and their respective representatives are acting." See Evans, 30 Mass. App. Ct. at 732. (internal quotes and citations omitted).

- 13 -

## CERTIFICATE OF SERVICE

I hereby certify that a true copy of the above document was served on this 5th day of November, 2004 by overnight mail upon the following counsel of record:

William C. Ries, Esq.
Robert L. McTiernan, Esq.
Jonathan S. McAnney, Esq.
Tucker Arensburg, P.C.
1550 One PPG Place
Pittsburgh, PA  15222

Ron Parry, Esq.
Robert R. Sparks, Esq.
Parry Deering Futscher & Sparks, P.S.C.
441 Garrard Street
Covington, Kentucky  41001

                                  /s/ Brett R. Budzinski
                                  Brett R. Budzinski

BOSTON 2302998v5