UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| SEAN D. RIES, JOHN R. MURRAY, PHILIP C. HENRY, and others similarly situated, <br><br> Plaintiffs, <br><br> v. <br><br> ALLMERICA FINANCIAL CORPORATION, ALLMERICA FINANCIAL LIFE INSURANCE AND ANNUITY COMPANY, and FREDERICK H. EPPINGER, JR., <br><br> Defendants. | Civil Action No. 04-40179-FDS |

## ORDER OF REMAND

**SAYLOR, J.**

This is a dispute over commissions owed to insurance agents for sales of variable annuity and life insurance products. Plaintiffs, three former agents of defendant Allmerica Financial Life Insurance and Annuity Company ("AFLIAC"), allege that defendants breached an agreement to pay the agents increased commissions on the sale of non-proprietary products (that is, annuity and life products administered by companies other than AFLIAC). The complaint alleges claims for breach of contract and violation of the Pennsylvania Wage Payment and Collection Law, 43 Pa. Cons. Stat. § 260.1, et seq.

The complaint was originally filed on May 12, 2004, in the Court of Common Pleas of Allegheny County, Pennsylvania. Defendants timely removed the action to the United States

District Court for the Western District of Pennsylvania, on grounds of purported diversity and federal question jurisdiction, and moved to transfer the case to this Court.  On July 13, 2004, plaintiffs moved to remand the action to the Pennsylvania state court for lack of federal jurisdiction.

On August 16, 2004, the District Court in Pennsylvania granted defendants' motion to transfer the case, on grounds of convenience and efficiency and to allow its consolidation with a related class action pending in this Court.  The District Court explicitly left it to this Court to resolve plaintiffs' motion to remand.

Plaintiffs' motion to remand asserted essentially two grounds:  first, that the $75,000 amount-in-controversy requirement for diversity jurisdiction was not satisfied, and second, that federal question jurisdiction did not exist because variable annuities and life insurance products were not "covered securities" within the meaning of the Securities Litigation Uniform Standards Act of 1998 ("SLUSA").  *See* 15 U.S.C. §§ 77p(c), 77r(b).[1]  On October 6, 2004, this Court denied the motion to remand.  Although the Court agreed that the amount-in-controversy requirement had not been met, the Court ruled that variable annuities were in fact "covered

---

[1] SLUSA amended both the Securities Act of 1933, 15 U.S.C. §§ 77a et seq., and the Exchange Act of 1934, 15 U.S.C. §§ 78a et seq., to add removal and preemption provisions.  *See* 15 U.S.C § 77p(b)-(c) and § 78bb(f)(1)-(2).  The Securities Act is chiefly concerned with disclosure and fraud in connection with offerings of securities, principally initial distributions of newly-issued stock from corporate issuers.  *See Blue Chip Stamps v. Manor Drug Stores*, 421 U.S. 723, 752 (1975).  The Exchange Act is chiefly concerned with post-distribution trading on national stock exchanges and securities trading markets.  *Id.*

It is unclear whether defendants are arguing that plaintiffs' state-law claims are preempted under § 77p(b)-(c) or § 78bb(f)(1)-(2), or both, as they cite both provisions in their motion to dismiss and in their opposition to plaintiffs' renewed motion to remand.  *See* Memorandum in Support of Motion to Dismiss at 1; Opposition Memorandum at 1.  For the sake of convenience, and because the provisions are virtually identical in form and substance, this Memorandum will refer only to the relevant amendments to the Securities Act, unless the context indicates otherwise.

securities" within the meaning of SLUSA, and that therefore federal question jurisdiction existed.

On November 5, defendants moved to dismiss plaintiffs' complaint on grounds that SLUSA required dismissal of any class action alleging securities fraud under state law. *See* 15 U.S.C. § 77p(b). On November 29, plaintiffs filed a renewed motion for remand, in which they requested that the Court reconsider its earlier ruling on subject matter jurisdiction. In this motion, they argue that, even if the action involves a "covered security," it nonetheless does not meet the other requirements for removal and preemption under SLUSA. *See* 15 U.S.C. § 77p(b)- (c).

For the reasons set forth below, the Court is persuaded by plaintiffs' arguments. Because this matter is not, in fact, preempted by SLUSA, this Court does not have subject matter jurisdiction over plaintiffs' state law claims, and the Court's order of October 6, 2004, denying the motion to remand was in error. The Court will therefore remand this matter to the Pennsylvania Court of Common Pleas, where it was originally filed, and where it should have remained.

**I.     Discussion**

    **A.     Requirements for Removal and Preemption under SLUSA**

Congress enacted SLUSA in order to make federal court "the exclusive venue for class actions alleging fraud in the sale of certain covered securities," and to ensure that such actions be "governed exclusively by federal law." *Lander v. Hartford Life & Annuity Ins. Co.*, 251 F.3d 101, 108 (2d Cir. 2001). SLUSA accomplishes these objectives, for the most part, by providing for the removal of state court class action securities fraud lawsuits and requiring their immediate dismissal. *Cape Ann Investors LLC v. Lepone*, 296 F. Supp. 2d 4, 10 (D. Mass. 2003) (citing *Riley v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 292 F.2d 1334, 1341 (11th Cir. 2002)).

Among other things, SLUSA provides as follows:

**(b) Class action limitations.** No covered class action based upon the statutory or common law of any State or subdivision thereof may be maintained in any State or Federal court by any private party alleging–

> (1) an untrue statement or omission of a material fact in connection with the purchase or sale of a covered security; or
>
> (2) that the defendant used or employed any manipulative or deceptive device or contrivance in connection with the purchase or sale of a covered security.

15 U.S.C. § 77p(b).[2] Section 77p(c) of the statute authorizes the removal to federal court of "any covered class action brought in any State court involving a covered security, as set forth in subsection (b)," and provides that such actions "shall be subject to subsection (b)." *Id.* § 77p(c).

In order to for an action to be removable and preempted under SLUSA, the removing party has the burden of showing that: (1) the suit is a "covered class action," as defined in SLUSA; (2) the action purports to be based on state law; (3) the action involves a "covered security" under SLUSA; (4) the claims allege misrepresentation or omission of material fact or employment of a manipulative or deceptive device; and (5) the wrongful conduct is alleged to have occurred "in connection with" the purchase or sale of a covered security. *See Green v. Ameritrade, Inc.*, 279 F.3d 590, 596 (8th Cir. 2002); *Araujo v. John Hancock Life Ins.*, 206 F. Supp. 2d 377, 381 (E.D.N.Y. 2002).

In their motion for reconsideration, plaintiffs do not appear to contest that their lawsuit is a "covered class action" that purports to be based on state law. Nor do they appear to take issue with the Court's determination that their lawsuit involves covered securities (variable life and

---

[2] The Exchange Act counterpart to § 77p(b), 15 U.S.C. § 78bb(f)(1), is different in one respect: whereas § 77p(b)(1) refers to "an untrue statement or omission of material fact," § 78bb(f)(1)(A) refers to "a misrepresentation or omission of material fact." The distinction is not material in this context.

4

annuity products).  *See Lander*, 251 F.3d at 108-15 (relying on *SEC v. Variable Annuity Life Insurance Co.*, 359 U.S. 65 (1959), in holding that "variable annuity contracts are securities" and that "variable annuity litigation falls into the class of suits targeted by Congress in SLUSA" for removal to federal court); *Herndon v. Equitable Variable Life Ins. Co.*, 325 F.3d 1252, 1253-55 (11th Cir. 2003) (holding that "a variable life insurance policy is a 'covered security' under SLUSA" because the addition of the "life insurance component to the investment does not negate the fact that the statutory requirements of SLUSA have been met with regard to the annuity component of the insurance policy").  Nonetheless, they argue that defendants have failed to show that their action meets the fourth and fifth requirements for removal and preemption under SLUSA.  The Court will analyze each requirement in turn.

### (1) Whether the Complaint Alleges an Untrue Statement or Omission of Material Fact or Employment of a Manipulative or Deceptive Device

To qualify for SLUSA preemption, a complaint must allege an untrue statement or omission of material fact or manipulative or deceptive conduct that could qualify as a form of securities fraud.  *See Magyery v. Transamerica Financial Advisors, Inc.*, 315 F. Supp. 2d 954, 961 (N.D. Ind. 2004); *see* Joint Explanatory Statement of the Committee of Congress, H.R. Conf. Rep. 105-803 (class actions relating to a covered security "alleging fraud or manipulation must be maintained . . . in Federal Court"; the solution to problem of litigation shifting to state courts "is to make Federal court the exclusive venue for most securities fraud class action litigation . . ."). In determining whether this requirement is satisfied, a court is directed to look at what the "private party [is] alleging," 15 U.S.C. § 77p(b), and "should be wary of a defendant's attempts to recast [a] complaint as a securities lawsuit in order to have it pre-empted by the SLUSA."

5

*MDCM Holdings, Inc. v. Credit Suisse First Boston Corp.*, 216 F. Supp. 2d 251, 257 & n.12 (S.D.N.Y. 2002).

The first count of the complaint asserts a claim for breach of contract. Claims for breach of contract, of course, ordinarily allege that a party failed to uphold a promise. *See Mills v. Polar Molecular Corp.*, 12 F.3d 1170, 1176 (2d Cir. 1993). However, the failure to carry out a promise under a contract does not constitute fraud unless the defendant secretly intended not to perform or knew at the time he entered into the contract that he could not perform. *See id.* ("contract breach, in and of itself, does not bespeak fraud, and generally does not give rise to tort damages," which flow from fraud and misrepresentation); *Magyery*, 315 F. Supp. 2d at 962 ("Attempting to read a fraud claim into a breach of contract claim blurs the distinction between two separate causes of action and merges them into one"). Thus, if a plaintiff alleges that the defendant failed to perform contractual obligations, without asserting that defendant misrepresented or committed fraud about its intent to satisfy those obligations, SLUSA is inapplicable. *See MDCM Holdings*, 216 F. Supp. 2d at 257-258 (no preemption where plaintiff did not explicitly allege misrepresentation or omission and did not need to offer any evidence about defendant's mental state to prevail on its breach of contract claim; court refused to speculate about defendant's intent at the time it signed the contract); *Magyery*, 315 F. Supp. 2d at 961 (refusing to "read into [the alleged] breach of contract and unauthorized trading a misrepresentation or omission of material fact sufficient to qualify as securities fraud and require preemption under SLUSA").

Here, plaintiffs assert claims for breach of contract and for violation of the Pennsylvania Wage Payment and Collection Law; there is no express claim for fraud or misrepresentation. *See*

6

Complaint, ¶¶ 55-63.  Defendants nonetheless argue that the complaint alleges fraud for purposes of SLUSA preemption.  Specifically, defendants point to the allegations that (1) Allmerica promised to pay 100% commissions on sales of non-proprietary products pursuant to a contract with plaintiffs, and then unilaterally rescinded the commission arrangement; and (2) Allmerica "attempted to coerce Plaintiffs into refunding the commissions they earned and were paid . . . by threatening collection efforts against them."  *See* Complaint ¶¶ 30-31, 37-42, 43-44, 49, 55-58; Defendants' Response to Motion for Reconsideration at 4.

The first allegation is merely an assertion that defendants broke a promise made to plaintiffs under a commission agreement.  It is therefore a claim for breach of contract, not a claim for fraud or misrepresentation.  The second allegation is a description of defendants' conduct subsequent to the execution of the commission agreement.  The alleged conduct might be coercive, or otherwise wrongful, but it is not fraudulent or deceptive.  The complaint does not allege that defendants secretly intended not to perform under the contract or that they knew that they could not perform when they executed the contract.  Thus, this action does not satisfy the fourth requirement for removal and preemption under SLUSA.

That conclusion alone necessitates the remand of this matter to state court.  Nonetheless, for the sake of completeness, the Court will consider whether defendants can satisfy the remaining element:  the requirement that the fraudulent conduct occur "in connection with" the purchase or sale of a covered security.

**(2)     Whether the Complaint Alleges That Defendants Engaged in Fraudulent Conduct "In Connection With" the Purchase or Sale of a Covered Security**

SLUSA does not define the phrase "in connection with" the purchase or sale of a covered

security. Because this phrase tracks the language of Section 10(b) of the Securities Exchange Act of 1934 and S.E.C. Rule 10b-5, cases interpreting those provisions are relevant to the interpretation of SLUSA's "in connection with" requirement. *See Lepone*, 296 F. Supp. 2d at 11.[3] Congress's principal objectives in passing the Securities Exchange Act were to protect investors from false and misleading practices and to promote overall investor confidence in the market. *SEC v. Zandford*, 535 U.S. 813, 819 (2002). In order to effectuate these purposes, the Supreme Court has instructed courts to read the "in connection with" language of Rule 10b-5 flexibly, and not technically or restrictively. *Id.*

In general, the "in connection with" element is met "'when the fraud alleged is that the plaintiff bought or sold a security in reliance on misrepresentations as to its value.'" *Araujo*, 206 F. Supp. 2d at 383 (quoting *Steiner v. Ames Dep't Stores, Inc.*, 991 F.2d 953, 967 (2d Cir. 1993)). However, the deception need not necessarily relate to the value of a particular security; it is enough that the alleged fraud and securities sale "coincide," such that they are "not independent events." *Zandford*, 535 U.S. at 820-21 (interpreting Rule 10b-5) (broker engaged in scheme to convert proceeds of sale of investors' securities to his own use); *see Superintendent of Ins. of N.Y. v. Bankers Life & Casualty Co.*, 404 U.S. 6, 9-10 (1971) (investor "duped" into believing that it would receive proceeds for the sale of its securities); *see also Ambassador Hotel Co. v.*

---

[3] Section 10(b) provides in pertinent part:

> It shall be lawful for any person . . . to use or employ, in connection with the purchase or sale of any security . . ., any manipulative or deceptive device in contravention of such rules as the [Securities and Exchange] Commission may prescribe.

15 U.S.C. § 78j. Rule 10b-5 forbids the use, "in connection with the purchase or sale of any security," of "any device, scheme, or artifice to defraud," or any other "act, practice, or course of business" that "operates . . . as a fraud or deceit." 17 C.F.R. § 240.10b-5.

*Wei-Chuan Investment*, 189 F.3d 1017, 1025 (9th Cir. 1999) ("While the fraud in question need not relate to the investment value of the securities themselves, it must have more than some tangential relation to the securities transaction"); *In re Financial Corporation of America*, 796 F.2d 1126, 1130 (9th Cir. 1986) (suggesting that the existence of a causal nexus between the alleged fraud and the securities transactions satisfies the requirements of section 10(b)).

Defendants here argue that the complaint alleges that they "misrepresented the amount of commissions plaintiffs would receive" in exchange for selling non-proprietary variable products, and that this fraud "coincides" with the sale of securities. Defendants' Response to Motion for Reconsideration at 4. Even assuming the existence of a fraud claim, the nexus between the sale of securities and the fraud in this context is far too tenuous to support the "in connection with" element of SLUSA preemption. The immediate purpose of the alleged deception was to induce the plaintiffs to enter into a commission agreement, not to procure a specific securities sale. *Compare, e.g., Bankers Life*, 404 U.S. at 9-10 (plaintiff authorized sale of securities because it had been misled into believing it would receive the proceeds from the sale). The commission agreement was entirely separate from, and preceded, any actual sale of annuities. *Compare, e.g., Zandford*, 535 U.S. at 820-821 ("This is not a case in which, after a lawful transaction had been consummated, a broker decided to steal proceeds . . . each sale was made to further [defendant's] fraudulent scheme; each was deceptive because it was neither authorized by, nor disclosed to, the [plaintiffs]").

Furthermore, the phrase "in connection with" is to be construed in a manner that protects investors from deception and promotes investor confidence. *Zandford*, 535 U.S. at 819. Plaintiffs in this case were salesmen who sold securities for the purpose of earning commissions,

9

not investors seeking to earn a profit from the sale of their securities; the purported fraud deprived them of commissions, not of the proceeds of their investment. *Compare id.* at 824 (fraud deprived seller of proceeds from sales of securities); *Bankers Life*, 404 U.S. at 10 ("[plaintiff] was injured as an investor through a deceptive device which deprived it of any compensation for the sale of its valuable block of securities"). A finding that the sales occurred "in connection with" the fraud would not promote investor confidence or protect investors from deception, but would instead convert what is essentially a dispute over workplace compensation into securities fraud litigation. The Court will not construe the "in connection with" requirement in a manner that leads to such a sweeping result.

Thus, the Court finds that, even if plaintiffs alleged fraud or misrepresentation (which they do not), defendants could not satisfy the fifth requirement for removal and preemption under SLUSA.

\*   \*   \*

The Court finds that this action does not satisfy the requirements for preemption under SLUSA, and therefore there is no basis for federal subject matter jurisdiction. Accordingly, plaintiffs' renewed motion for remand is granted. *See* 28 U.S.C. § 1447(c) ("[i]f at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded"). In light of its ruling on subject matter jurisdiction, the Court will make no ruling on defendants' motion to dismiss, which will be remanded with this matter to Pennsylvania state court.

**Order**

For the reasons stated in the foregoing memorandum, the Court hereby ORDERS that this matter be remanded to the Court of Common Pleas of Allegheny County, Pennsylvania.

**So Ordered.**

/s/ F. Dennis Saylor
F. Dennis Saylor IV
United States District Judge

Dated: May 6, 2005